**LYNNBROOK FARMS, Plaintiff–Appellant,**

v.

**SMITHKLINE BEECHAM CORPORATION, Defendants–Appellees.**

No. 95–2051.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 27, 1995.

Decided March 21, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied April 22, 1996.

Matthew C. Potts, Whitney & Potts, Ltd., Elmwood, IL and James A. Davis (argued), Davis & Associates, Tremont, NE, for Plaintiff–Appellant.

Michael A. Pollard, John M. McGarry, Thomas R. Nelson, Baker & McKenzie, Chicago, IL, Scott A. Smith and Janell M. Gabor (argued), Popham, Haik, Schnobrich & Kaufman, Minneapolis, MN, for Defendant–Appellee.

Before FLAUM, ROVNER and EVANS, Circuit Judges.

FLAUM, Circuit Judge.

This case requires us to determine whether certain state common law causes of action asserted against a manufacturer of animal vaccines are preempted by federal law. Plaintiff, Lynnbrook Farms ("Lynnbrook"), sued Smithkline Beecham Corporation ("SBC") alleging that its cattle were injured and many were killed after being inoculated with animal vaccines manufactured by SBC. The district court granted summary judgment in favor of SBC, finding Lynnbrook's claims were preempted in their entirety by the United States Department of Agriculture's ("USDA") declaration of preemption issued through its Animal and Plant Health Inspection Service ("APHIS"). We affirm.

## I.

The relevant facts are undisputed for purposes of our consideration of the preemption issue. The parties agree that we should accept as true the material allegations contained in Lynnbrook's complaint. In 1992, Lynnbrook vaccinated its cattle with two vaccines manufactured and sold by SBC—CattleMaster 4 and Ultrabac 7/Somubac. Lynnbrook followed all directions and correctly administered the vaccines. Both of the vaccines used by Lynnbrook were specifically licensed by APHIS, the agency charged by the USDA with regulating animal vaccines. 9 C.F.R. § 101.2. Lynnbrook employed the vaccines to prevent its cattle from contracting debilitating or mortal infections and diseases. Notwithstanding the inoculation of Lynnbrook's cattle with these vaccines, the cattle did contract infections and diseases that ultimately killed some of the cattle and debilitated others to an extent that Lynnbrook had to sell or dispose of them at a loss. We assume that the vaccines used were either not effective in preventing the maladies they were designed to guard against, or that the vaccines caused other harm to Lynnbrook's cattle.

Lynnbrook proceeded to sue SBC for the damages it incurred due to the loss of its cattle. Lynnbrook sought recovery under theories of strict products liability, misrepresentation, false advertising, and breach of implied warranties of merchantability and fitness. SBC moved for summary judgment, contending that Lynnbrook's claims were preempted by APHIS regulations promulgated pursuant to the Virus–Serum–Toxin Act ("VSTA"), 21 U.S.C. §§ 151–159. APHIS declared that "states are not free to impose requirements which are different from, or in addition to, those imposed by USDA regarding the safety, efficacy, potency or purity of a product." 57 Fed.Reg. 38759 (August 27, 1992). SBC maintained that this express declaration of preemption encompassed all of Lynnbrook's claims. Lynnbrook contested both the validity and the scope of the preemption provision. The district court agreed with SBC and granted summary judgment in its favor on all counts.

## II.

■ We review the district court's grant of summary judgment *de novo*. *Green v. Shalala,* 51 F.3d 96, 99 (7th Cir.1995). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e). Even accepting the facts as recited above and giving Lynnbrook the benefit of all reasonable inferences (as we must in a summary judgment situation, *see Smith v. Shawnee Library Sys.,* 60 F.3d 317, 320 (7th Cir.1995)), a finding that Lynnbrook's claims are preempted by federal law would entitle SBC to judgment as a matter of law.

At the outset, we note that the validity and scope of APHIS' preemption statement is one of first impression at the circuit court level. According to our research, all other courts that have addressed the issue, including the district court below, have reached a conclusion similar to that which we reach today, i.e., that state common law claims of the type asserted in this case are preempted by the APHIS regulation. *See Lynnbrook Farms v. Smithkline Beecham Corp.,* 887 F.Supp. 1100 (C.D.Ill.1995); *Murphy v. Smithkline Beecham Corp.,* 898 F.Supp. 811 (D.Kan.1995); *Brandt v. The Marshall Animal Clinic and SmithKline Beecham Corp.,* 540 N.W.2d 870 (Minn.Ct.App.1995).

### A.

■ The Supremacy Clause of the Constitution declares that "the Laws of the United States ... shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2. The "Laws of the United States" encompasses both federal statutes and statutorily authorized federal agency regulations. *City of New York v. F.C.C.,* 486 U.S. 57, 63, 108 S.Ct. 1637, 1641–42, 100 L.Ed.2d 48 (1988). With this understanding, the Supreme Court has delineated several avenues by which state law may be superseded by federal law, including when a federal agency acts within the scope of its congressionally delegated authority to preempt state law. *Id.* at 63–64, 108

S.Ct. at 1642; *Louisiana Public Service Comm'n v. F.C.C.,* 476 U.S. 355, 369, 106 S.Ct. 1890, 1899, 90 L.Ed.2d 369 (1986); *Fidelity Federal Savings and Loan Assoc. v. de la Cuesta,* 458 U.S. 141, 152–54, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 699–700, 104 S.Ct. 2694, 2700–01, 81 L.Ed.2d 580 (1984). "In proper circumstances, [an] agency may determine that its authority is exclusive and preempt[ ] any state efforts to regulate in the forbidden area." *City of New York,* 486 U.S. at 64, 108 S.Ct. at 1641. SBC claims that this type of preemption governs this case. SBC's sole argument is that APHIS expressly preempted all state law claims pursuant to the power delegated to it under VSTA.[1]

██ In ascertaining whether an agency has acted properly in preempting state law, it is significant to note that an express Congressional authorization to displace state law in the delegating statute is unnecessary. *de la Cuesta,* 458 U.S. at 154, 102 S.Ct. at 3023. The Supreme Court has warned that a "narrow focus on Congress' intent to supersede state law [is] misdirected." *Id.; City of New York,* 486 U.S. at 64, 108 S.Ct. at 1642. Rather, the proper inquiry is to determine whether the power to preempt is within the bounds of authority granted to the agency by Congress, and if so, whether the agency has acted on this authority. *Id.* The Court has made it clear that the great deference generally afforded agency action is not discarded when the agency uses its delegated discretion to preempt. "Where Congress has directed an administrator to exercise his discretion," and the administrator promulgates regulations intended to preempt state law, "his judgments are subject to judicial review only to determine whether he has exceeded his statutory authority or acted arbitrarily." *de la Cuesta,* 458 U.S. at 154–55, 102 S.Ct. at 3023; *see also Crisp,* 467 U.S. at 699–700, 104 S.Ct. at 2700–01.

Thus, we engage in a three-part analysis to determine if the regulatory actions of APHIS preempt Lynnbrook's state law claims. First, we must ascertain whether the power to preempt is within the authority delegated to the USDA and APHIS by Congress and is a rational exercise of that authority. If so, we then ask whether APHIS intended its regulations to preempt state common law claims. Finally, if APHIS did seek to preempt state common law, we consider whether the regulations preempt the specific causes of actions asserted by Lynnbrook.

## B.

██ In order to answer the first question, we examine the congressional mandate that forms the basis of the agency's authority. VSTA requires that all animal vaccines produced in the United States and all establishments that manufacture such vaccines be licensed by the USDA. 21 U.S.C. § 154. The Act also broadly confers on the USDA the authority to "make and promulgate from time to time such rules and regulations as may be necessary to prevent the preparation [and] sale ... of any worthless, contaminated, dangerous, or harmful virus, serum, toxin, or analogous product for use in the treatment of domestic animals...." *Id.* The USDA has delegated this responsibility and authority to APHIS. 9 C.F.R. § 101.2. APHIS, in turn, has promulgated an extensive regulatory scheme governing the design, manufacture, distribution, testing, and labelling of animal vaccines. *See* 9 C.F.R. §§ 101–24.

Prior to 1985, several courts held that the scope of VSTA, and hence the application of APHIS regulations, was limited to products made and sold in interstate commerce. In other words, VSTA did not grant the USDA and APHIS the authority to regulate animal vaccines manufactured and sold within an individual state. *See Animal Health Insti-*

---

**1.** SBC is not claiming that APHIS' comprehensive agency regulation in the field implies preemptive intent on the part of Congress. *See Hillsborough County, Fla. v. Automated Medical Lab., Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) (extensive federal scheme of regulation may imply preemption).

SBC is relying on APHIS' *express* preemption declaration, not a theory of *implied* preemption. Thus, Lynnbrook's arguments that APHIS' extensive regulations alone, without comprehensive regulation by Congress, cannot lead to implied preemption are inapposite.

*tute v. U.S. Dept. of Agriculture,* 487 F.Supp. 376 (D.Colo.1980); *Grand Lab., Inc. v. Harris,* 644 F.2d 729 (8th Cir.1981), *cert. denied,* 456 U.S. 927, 102 S.Ct. 1972, 72 L.Ed.2d 442 (1982). In response, Congress amended VSTA in 1985 to clearly place both interstate and intrastate vaccines within the ambit of federal control. 21 U.S.C. § 151; S.Rep. No. 145, 99th Cong., 1st Sess. 338–39 (1985), *reprinted in* 1985 U.S.C.C.A.N. 1676, 2004–05. The amendments reflect the Congressional finding that federal regulation was "necessary to prevent and eliminate burdens on commerce and to effectively regulate such commerce." 21 U.S.C. § 159.

The legislative history supporting the VSTA amendments also evinces an unquestionable congressional intent to create national, uniform standards for the preparation and sale of animal vaccines. S.Rep. No. 145 at 339. Congress found that animal agriculture has "changed drastically" since the original 1913 passage of VSTA, including the development of "truly national markets." *Id.* It also noted that the industry recognized the need for national standards. *Id.* Congress thus concluded that uniform, federal standards would better serve livestock owners, veterinarians, and the American public. *Id.*

In reaction to the VSTA amendments, APHIS issued the declaration of preemption relied upon by SBC. The declaration states in relevant part:

> [W]here safety, efficacy, purity, and potency of biological products are concerned, it is the agency's intent to occupy the field. This includes, but is not limited to the regulation of labeling. Under VSTA, Congress clearly intended that there be national uniformity in the regulation of these products.

> \* \* \*

> APHIS ... does not agree that States should be allowed to add various restrictions ... based upon a need to protect domestic animals or the public health, interests or safety. Any restrictions, other than those which are necessary to address a local disease condition, should be Federally imposed so that they are uniform nationwide.

\* \* \*

> States are not free to impose requirements which are different from, or in addition to, those imposed by USDA regarding the safety, efficacy, potency, or purity of a product. Similarly, labeling requirements which are different from or in addition to those in the regulations under the Act may not be imposed by the States. Such additional or different requirements would thwart the Congressional intent regarding uniform national standards, and would usurp USDA's authority to determine which biologics are pure, safe, potent and efficacious.

57 Fed.Reg. 38758, 38759 (August 27, 1992) (emphasis added).

We find that APHIS acted rationally and within the scope of the authority granted to it by Congress in issuing the above statement seeking to preempt state law. Congress granted the USDA and APHIS the broad regulatory power to promulgate and enforce "such rules and regulations as may be necessary" to prevent the production and sale of any "worthless, contaminated, dangerous or harmful" animal vaccines. Congress also delegated to the USDA and APHIS the responsibility to eliminate "undue burdens" on commerce in this area, and toward that end, to establish a national, uniform regulatory scheme. It is apparent that APHIS' congressional mandate is to ensure safe and effective vaccines while at the same time minimize undue burdens on interstate commerce that often accompany varied state regulation. Given these powers and responsibilities, APHIS was acting rationally, and well within its congressionally delegated discretion, in creating a complex statutory scheme governing the safety, efficacy, purity, and potency of animal vaccines and in pronouncing this scheme to be the exclusive law in the area. The Supreme Court has held that:

> if the agency's choice to preempt "represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the ac-

commodation is not one that Congress would have sanctioned."

*City of New York,* 486 U.S. at 64, 108 S.Ct. at 1642 (quoting *United States v. Shimer,* 367 U.S. 374, 383, 81 S.Ct. 1554, 1560–61, 6 L.Ed.2d 908 (1961)); *de la Cuesta,* 458 U.S. at 154, 102 S.Ct. at 3023. The instant case of preemption reflects a prime example of such an accommodation. Nothing in the legislative history of either VSTA or its amendments indicates that APHIS' actions would not be congressionally sanctioned. On the contrary, the course chosen serves only to further VSTA's purposes—further indicating that the agency was acting within its authority and not acting arbitrarily. *See de la Cuesta,* 458 U.S. at 159, 102 S.Ct. at 3025. Thus we decline to disturb the agency's judgment to preempt state law.

Our conclusion is bolstered by several Supreme Court cases that have upheld agency decisions to preempt state law under similarly expansive congressional grants of authority. In *City of New York,* the Court upheld the FCC's power to preempt state and local cable television quality standards, citing the FCC's plenary authority to "[m]ake such rules and regulations and prescribe such restrictions and conditions ... as may be necessary to carry out" the Commission's statutory purposes. 486 U.S. at 66–67, 108 S.Ct. at 1643–44; *see also Crisp,* 467 U.S. at 699–700, 104 S.Ct. at 2700–01. In support of its decision, the Court noted Congress' stated objectives to "establish a national policy concerning cable communications" and to "minimize unnecessary regulation that would impose an undue economic burden on cable systems." *City of New York,* 486 U.S. at 61, 108 S.Ct. at 1640–41 (quoting 47 U.S.C. §§ 521(1), (6) (1982)).

The Court similarly found that the Federal Home Loan Bank Board could preempt state common law restrictions on due-on-sale practices, as Congress authorized the Board "under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation" of federal savings and loan asso-

ciations. *de la Cuesta,* 458 U.S. at 170, 102 S.Ct. at 3031 (quoting 12 U.S.C. § 146(a)(1)). The *de la Cuesta* Court found it significant that Congress' delegation placed no limits on the Board's authority to regulate the lending practices of federal savings and loans and included the power to create and regulate a "uniform system of [savings and loan] institutions where there are not any now." *Id.* at 161, 166, 102 S.Ct. at 3026, 3029. The grant of authority to the USDA and APHIS under VSTA is no less broad than the power delegated to the FCC and the Federal Home Bank Loan Board. And like those agencies, APHIS has been charged with establishing a uniform, national regulatory scheme.

Lynnbrook apparently acknowledges that Congress granted APHIS the authority to preempt state *regulations* concerning animal vaccines, yet questions APHIS' power to preempt state *tort actions.* Lynnbrook argues that this power is lacking based on the absence of any express authority to preempt state tort law in VSTA. However, as we have already noted, a specific congressional authorization is not a prerequisite to the validity of an agency's preemption decision. The Court has clearly stated that "[f]ederal regulations have no less preemptive effect than federal statutes.... A preemptive regulation's force does not depend on express congressional authorization to displace state law...." *de la Cuesta,* 458 U.S. at 153–54, 102 S.Ct. at 3022–23.

Lynnbrook also relies on prior caselaw preserving state tort claims in the area of human vaccines to argue that APHIS' delegated authority is limited to preemption of positive regulations. These cases are all distinguishable in important respects. Several of the cases invoked the National Childhood Vaccine Injury Act (42 U.S.C. § 300aa–1 *et seq.*) and the Vaccine Compensation Amendments (26 U.S.C. § 9510) in finding no preemption of state tort claims.[2] However, in these acts Congress explicitly *preserved* state tort claims for human vaccine related injuries. *See Abbot,* 844 F.2d at 1109 (4th Cir. 1988). The remaining cases cited by Lynn-

---

2. *Abbot v. American Cyanamid Co.,* 844 F.2d 1108 (4th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988); *Graham v.*

*Wyeth Lab.,* 666 F.Supp. 1483 (D.Kan.1987), and *Foyle v. Lederle Lab.,* 674 F.Supp. 530 (E.D.N.C. 1987).

brook involved FDA regulations;[3] yet the FDA has never expressed any intent to preempt state tort law. On the contrary, the FDA has expressly preserved state tort labelling claims. *Bansemer*, 1990 WL 132579 at *3. Thus, these cases do not persuade us that there is a congressionally intended distinction in VSTA between the power to preempt state regulations and the power to preempt state tort claims.

■ Lynnbrook finally invokes the presumption against preemption and the heightened presumption in areas that have traditionally been the province of the states, such as health and safety. *Abbot*, 844 F.2d at 1112. This presumption, however, can be overcome by an agency's clear declaration of intent to preempt state law. *Hillsborough County, Fla. v. Automated Medical Lab., Inc.*, 471 U.S. 707, 715–16, 105 S.Ct. 2371, 2376, 85 L.Ed.2d 714 (1985) (noting that presumption governs unless preemption "was the clear and manifest purpose of Congress.... Of course, the same principles apply where, as here, the field is said to have been preempted by an agency...."). Thus, if APHIS' declaration of preemption clearly encompasses state tort claims (which is our next inquiry), the presumption against preemption offers Lynnbrook no shelter.

We further note that, where similarly broad grants of authority have been involved, the Supreme Court has never intimated a distinction between agency authority to preempt state law generally and the authority to preempt state common law. *See de la Cuesta*, 458 U.S. at 152–67, 102 S.Ct. at 3022–30; *Crisp*, 467 U.S. at 698–705, 104 S.Ct. at 2699–2703; *City of New York*, 486 U.S. at 63–69, 108 S.Ct. at 1642–45. On the contrary, the *de la Cuesta* Court, without hesitation, upheld agency preemption of a state common law rule—a state regulation or statute was not involved. 458 U.S at 148–49, 102 S.Ct. at 3020.

Moreover, it is significant that in this case Congress was concerned with establishing national uniform standards for animal vaccines. The Supreme Court has recognized that state tort law can impose standards in a manner similar to positive enactments. *See Cipollone v. Liggett Group*, 505 U.S. 504, 521, 112 S.Ct. 2608, 2620, 120 L.Ed.2d 407 (1992) ("state regulation can be as effectively exerted through an award of damages as through some form of preventive relief"). State tort actions can therefore be as much of a threat to national uniformity as affirmative state regulation. Thus, without any congressional indication to the contrary, it follows that Congress included within its grant of preemption power, the power to preempt state common law. Lynnbrook's argument in this case essentially creates a distinction without a meaningful difference. In sum, we are confident that if APHIS intended to preempt state common law, it was acting within its congressionally delegated authority.

### C.

■ As set forth above, APHIS' preemption statement is clear and comprehensive. In an effort to fulfill its mandate to create a national, uniform system of regulations, APHIS announced it intended to "occupy the field" concerning "the safety, efficacy, purity and potency of biological products." Toward this goal, APHIS decisively stated that "[s]tates are not free to impose requirements which are different from, or in addition to, those imposed by USDA regarding the safety, efficacy, potency, or purity of a product." Lynnbrook argues that this statement reflects only an intent to preempt state regulation of animal vaccines or similar positive enactments, but not an intent to preempt state common law actions such as those brought by Lynnbrook. We are not persuaded.

First, APHIS chose language that mirrors preemption language in federal statutes that has been held by the Supreme Court, this court, and many other courts, to preempt both state regulations and common law damages actions. In *Cipollone v. Liggett Group*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), the Supreme Court interpreted the

---

**3.** *Bansemer v. Smith Lab., Inc.*, 1990 WL 132579 (E.D.Wis.1988); *Hoppe v. G.D. Searle & Co.*, 779 F.Supp. 1413 (S.D.N.Y.1991); *Ferrigno v. Eli Lil-* *ly & Co.*, 175 N.J.Super. 551, 420 A.2d 1305 (1980); and *Stevens v. Parke, Davis & Co.*, 9 Cal.3d 51, 107 Cal.Rptr. 45, 507 P.2d 653 (1973).

preemption provision in the Public Health Cigarette Smoking Act of 1969, which amended the earlier Federal Cigarette Labeling and Advertising Act of 1965. The 1969 provision provided:

> *No requirement or prohibition based on smoking and health shall be imposed under state law* with respect to the advertising and promotion of any cigarettes the packages of which are labelled in conformity with the provision of this Act.

*Id.* at 515, 112 S.Ct. at 2617.[4] The petitioners in *Cipollone* made the same argument that Lynnbrook advances here, maintaining that the provision was not intended to preempt state common law causes of action. The Court disagreed, finding "such an analysis [ ] at odds with the plain words of the 1969 Act and with the general understanding of common law damages actions." *Id.* at 521, 112 S.Ct. at 2620. The Court continued: "The phrase 'no requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules." The Court thus rejected the petitioner's argument and held that the provision preempted common law actions. *Id.* at 523–24, 112 S.Ct. at 2621. The Court warned, however, that the clause should not be taken as a blanket preemption of all common law claims. *Id.* The Court continued its analysis to determine which claims fell under the specific language of the clause. *Id.*

Following the Supreme Court's lead, we and other circuit courts (as well as many district courts) have held that language similar to that in *Cipollone*, and substantially the same as the APHIS preemption provision, encompasses common law actions. For instance, in *Shaw v. Dow Brands, Inc.*, 994 F.2d 364 (7th Cir.1993), we were called upon to determine the scope of the preemption language in the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136v(b). The act stated that "[s]uch State shall not impose ... any requirements for labeling or packaging in addition to or different from those required under this subchapter." *Id.* at 370. With *Cipollone* as our touchstone, we found that the *Cipollone* language of "[n]o requirements or prohibitions" was "just another way of saying a[s]tate shall not impose ... any requirements," and we therefore held that plaintiff's strict liability and negligence failure to warn claims were preempted by FIFRA. *Id.* at 371. Six other circuits have reached similar conclusions. *See, e.g., Taylor AG Industries v. Pure–Gro*, 54 F.3d 555 (9th Cir.1995); *Bice v. Leslie's Poolmart*, 39 F.3d 887 (8th Cir.1994); *MacDonald v. Monsanto Co.*, 27 F.3d 1021 (5th Cir.1994); *Worm v. American Cyanamid Co.*, 5 F.3d 744 (4th Cir.1993); *King v. E.I. DuPont De Nemours & Co.*, 996 F.2d 1346 (1st Cir.), *cert. dismissed*, —— U.S. ——, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993); *Papas v. Upjohn Co.*, 985 F.2d 516 (11th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993). More recently, we have held that language in the Medical Device Amendments ("MDA") to the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 360k(a), proscribing "any requirement ... different from, or in addition to," those established pursuant to the MDA extended to preempt certain common law actions. *Mitchell v. Collagen Corp.*, 67 F.3d 1268, 1276 (7th Cir. 1995); *see also Slater v. Optical Radiation Corp.*, 961 F.2d 1330, 1333 (7th Cir.), *cert. denied*, 506 U.S. 917, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992). Many circuits agree. *See, e.g., Michael v. Shiley, Inc.*, 46 F.3d 1316 (3rd Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 67, 133 L.Ed.2d 29 (1995); *Reeves v. AcroMed Corp.*, 44 F.3d 300 (5th Cir.),

---

4. The Court also interpreted the original preemption provision in the 1965 Act. That provision stated:

> (a) No statement relating to smoking and health, other than the statement required by section 4 of this Act, shall be required on any cigarette package.
>
> (b) No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

*Cipollone*, 505 U.S. at 513–15, 112 S.Ct. at 2616. Finding this language much more narrow and precise than the language in the 1969 provision, the Court held the prior language was not intended to preempt state tort laws. *Id.* at 519–20, 112 S.Ct. at 2619.

*cert. denied,* ——— U.S. ———, 115 S.Ct. 2251, 132 L.Ed.2d 258 (1995); *National Bank of Commerce v. Kimberly–Clark Corp.,* 38 F.3d 988 (8th Cir.1994).[5] Lynnbrook has not distinguished the language used by APHIS in any meaningful way from the language used in FIFRA or the MDA.[6] In the face of this strong and consistent authority, we are compelled to reach the same conclusion we reached in *Shaw.* If common law actions cannot survive under the 1969 cigarette law, FIFRA or the MDA, then common law actions imposing additional requirements on animal vaccines cannot survive the reach of the APHIS provision. *See Shaw,* 994 F.2d at 371.

Although the caselaw supporting our conclusion is substantial, we are even more confident that APHIS intended to include common law damages actions within the scope of its preemption after reviewing the only official APHIS statement (to our knowledge) explaining its intent in adopting the quoted regulation. In a letter dated December 22, 1995, the Acting Administrator of the agency explained, that the intent in "promulgating the rule was, and continues to be, to preempt States from imposing requirements either through statutes, regulations, *or other means* that are different from, or in addition to, those imposed by USDA regarding the safety, efficacy, potency, or purity of a product."

(emphasis added).[7] The letter further stated that "[w]e did not intend to preempt common law actions for damages *arising from non-compliance with USDA regulatory standards.*" (emphasis added). Interestingly, both sides claim the letter unequivocally supports their position.

We must agree with SBC that the correspondence confirms the interpretation that APHIS intended certain state tort claims to be preempted. Contrary to Lynnbrook's argument that APHIS only intended to preempt positive enactments, the agency included in its preemptive scope additional requirements dictated by States via "regulations, statutes, or other means." The phrase "or other means" clearly encompasses state tort claims. Moreover, APHIS' letter signals that state tort claims are available when APHIS regulatory standards are violated or disregarded. The natural conclusion to draw from this statement is that when APHIS regulations are heeded, state tort claims involving the safety, efficacy, potency, or purity of an animal vaccine do *not* survive. This dichotomy follows from the preemption language chosen by APHIS, as it is precisely when APHIS regulations have been satisfied that a common law action imposes requirements in addition to, or different from, those mandated by APHIS.[8] Where noncompliance is involved, a common law action could

5. Similar language in the Federal Hazardous Substances Act ("FHSA"), 15 U.S.C. § 1261, has also been held to preempt common law damages actions. *See Moss v. Parks Corp.,* 985 F.2d 736 (4th Cir.), *cert. denied,* 509 U.S. 906, 113 S.Ct. 2999, 125 L.Ed.2d 693 (1993).

6. Lynnbrook's only attempt to avoid the result dictated by these precedents is to claim that, in the cases of FIFRA and the MDA, the language was employed by Congress in a statute, not by an agency in a regulation. However, as we have now noted several times, this is of no moment, as "federal regulations have no less preemptive effect than federal statutes." *de la Cuesta,* 458 U.S. at 153–54, 102 S.Ct. at 3022.

7. Following oral argument, Lynnbrook submitted a motion to take judicial notice of the letter from APHIS, along with two other letters. The motion is granted as to the December 22, 1995 APHIS letter; the motion is denied as to the other two letters. The parties have also made several other post oral argument motions, all of which we deny.

8. APHIS regulations extensively govern the manufacture and marketing of vaccines in order to ensure their safety, purity, potency and efficacy. For instance, manufacturers are required to submit an "Outline of Production" detailing every step in the design, testing, production, and packaging of all animal vaccines. *See* 9 C.F.R. §§ 114.8–9. The outline is a precondition to licensure by APHIS, and no changes may be made to the outline without approval from APHIS. 9 C.F.R. § 102.5(d)(1). In addition, the regulations provide an elaborate testing protocol that must be administered by the manufacturer or by APHIS. *See* 9 C.F.R. §§ 113.25–55; 9 C.F.R. §§ 113.64–.332. Further, APHIS requires all animal vaccines to list certain information on all labels, including the container label, the carton label, and any product insert, circular or leaflet. 9 C.F.R. § 112. The label must be approved by APHIS in writing prior to licensure. *Id.* Thus, when all regulations are complied with and APHIS licenses the vaccine, it is clear that the vaccine satisfies APHIS standards for safety, purity, potency, and efficacy.

simply serve to impose the standards of APHIS. Thus, it is evident that APHIS intended to preempt common law claims relating to areas under its regulatory control (namely the safety, purity, potency, and efficacy of vaccines) which would impose additional or different requirements on vaccines, i.e., common law claims involving regulated areas in cases where the manufacturer has complied with all APHIS regulations and standards. The last step is to determine if Lynnbrook's claims fall within this preempted group of claims.

### D.

It is undisputed that SBC manufactured and marketed Cattlemaster 4 and Ultrabac 7/Somubac according to all APHIS regulations. This is not a case involving non-compliance. Both vaccines have met APHIS standards for safety, purity, potency, and efficacy. Thus, if Lynnbrook's claims relate to these qualities, seeking to impose additional or different requirements in these areas, they are preempted. We find that this describes all of Lynnbrook's claims.

■■■■ Counts I and VII of Lynnbrook's complaint sound in strict products liability (one for each vaccine), apparently based on the theory that the vaccines were defective and unreasonably dangerous. If these claims are allowed to proceed they would impose a duty on SBC regarding at least the safety (if not also the efficacy, purity and potency) of the cattle vaccines different from the requirements enforced by APHIS. Counts II and III state claims for breach of implied warranties of fitness for a particular purpose and of merchantability. These actions clearly implicate the efficacy and safety of the vaccines and would likewise impose higher or different standards on SBC.

■■■■ Counts IV and V of the complaint allege fraudulent misrepresentation and false advertising under the common law and the Illinois Consumer Fraud and Deceptive Business Practices Act. Lynnbrook alleges that SBC falsely represented that the vaccines were safe and effective when it knew they were not. In order to succeed on these claims, a jury would have to find that the vaccines were not safe and effective. However, APHIS has already declared the products safe and efficacious by its standards. Thus a different standard would be enforced. In addition, these counts could be viewed as failure to warn claims, *see King v. Collagen Corp.*, 983 F.2d 1130, 1136 (1st Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993), which would result in labeling requirements distinct from those dictated by APHIS. The same is true of Counts VI and VIII, which allege strict liability failure to warn claims (one for each vaccine).

APHIS has licensed both Cattlemaster 4 and Ultrabac 7/Somubac and thus declared the vaccines are safe, efficacious, potent and pure by its measures. By bringing claims that clearly implicate and call into question these qualities, Lynnbrook seeks to "impose requirements which are different from, or in addition to, those imposed by USDA regarding the safety, efficacy, potency or purity of a product." The claims are thus preempted in their entirety.

### III.

We recognize that the conclusion we reach today leaves Lynnbrook and similar plaintiffs no remedy for the injuries and losses that they have suffered. However, we are not at liberty to reverse the judgments of an agency acting within its congressionally delegated authority. It is evident not only that APHIS intended claims such as those brought by Lynnbrook to be preempted, but also that Congress granted APHIS the power to act on those intentions. Therefore we AFFIRM the district court's order granting summary judgment in SBC's favor.