Kelley C. SILVEY and John Steven Silvey, partners, d/b/a Silvey Egg Company and Silvey Egg Ranch, Plaintiffs/Appellants,

v.

MALLINCKRODT, INC., a foreign corporation, Mallinckrodt Veterinary, Inc., a foreign corporation, and Sterwin Laboratories, Inc., a foreign corporation, Defendants/Respondents.

No. 73051.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 9, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 26, 1998.

Application for Transfer Denied Oct. 20, 1998.

A.G. Tindall, Tindall & Akers, Potosi, W. Edward Reeves, Caruthersville, for plaintiffs/appellants.

Rodney M. Sharp, Kenneth J. Brennan, St. Louis, for defendants/respondents.

CRANE, Presiding Judge.

Plaintiff poultry owners appeal from the trial court's entry of summary judgment in favor of defendant vaccine manufacturers on the ground that plaintiffs' common law claims against defendants for damages suffered as a result of their use of an infected poultry vaccine were preempted by federal regulations. Plaintiffs primarily claim that the trial court erred in finding all of their causes of action to be preempted by federal APHIS regulations. We agree and hold that the claims stated in Counts I through V, to the extent that they seek damages for defendants' failure to comply with APHIS regulations, are not preempted. Accordingly, we reverse the judgment on all counts and remand.

The motion for summary judgment was based on the following undisputed facts. Plaintiffs Kelley C. Silvey and John Steven Silvey are partners doing business as Silvey Egg Company and Silvey Egg Ranch in Washington County, Missouri. Plaintiffs are in the business of raising poultry for laying eggs and selling eggs. Defendants Mallinckrodt, Inc., Mallinckrodt Veterinary, Inc., and Sterwin Laboratories, Inc. are Delaware corporations licensed to do business in the State of Missouri. Defendants are in the business of manufacturing and selling animal and poultry vaccines, including a vaccine called "Ava–Pox–LM". Ava–Pox–LM is intended to protect vaccinated poultry against the disease "Fowl Pox". Ava–Pox–LM was licensed by the United States Department of Agriculture (DOA) for use on poultry under USDA License No. 226.

Defendants sold Ava–Pox–LM to plaintiffs. At the time it left defendants' control, the Ava–Pox–LM was contaminated with an extraneous virus called "reticuloendotheliosis virus" or "REV". Plaintiffs administered the vaccine to two of their pullet flocks. The REV infection in the two flocks spread to their other poultry flocks. The infection caused many of the infected chickens to die and the surviving chickens to lay less eggs, resulting in a loss of income and profits from the sale of eggs.

Plaintiffs filed a petition against defendants to recover damages for misrepresentation (Count I), breach of implied warranty of merchantability (Count II), breach of implied warranty of fitness for a particular purpose (Count III), strict liability (Count IV), and failure to comply with Department of Agriculture regulations (Count V). Defendants moved for summary judgment on the ground that all of plaintiffs' claims were preempted by federal regulations promulgated by the Animal and Plant Health Inspection Service (APHIS) pursuant to the Virus, Serums, Toxins, Anti–Toxins, and Analogous Products Act (VSTA), 21 U.S.C. Sections 151 through 159. The trial court entered summary judgment on this basis. Plaintiffs appeal from that judgment.

## DISCUSSION

Plaintiffs contend that the trial court erred in granting defendants' motion for summary judgment on the ground that all of plaintiffs' claims were preempted by APHIS regulations. Plaintiffs argue that 1) Congress did not authorize APHIS to preempt a plaintiff's state law damage claims against manufacturers of defective animal vaccines and 2) the APHIS declaration does not evidence APHIS's intent to preempt state common law and statutory damage claims against manufacturers of defective animal vaccines, but rather only intended to preempt positive state enactments which impose standards which are different from or in addition to those promulgated by APHIS. We hold that Congress did authorize APHIS to preempt certain state law damage claims, and APHIS intended to do so. However, the scope of that preemption does not extend to claims based on non-compliance with APHIS regulations.

### A. The Preemption Doctrine

The Federal Government is empowered under the Supremacy Clause of the United States Constitution to preempt state laws to

the extent it believes that such action is necessary to achieve its purpose. City of New York v. FCC, 486 U.S. 57, 63, 108 S.Ct. 1637, 1642, 100 L.Ed.2d 48 (1988). It may do so by federal statute or by federal regulations which have been properly adopted in accordance with statutory authorization. 486 U.S. at 63, 108 S.Ct. at 1642. Thus, a federal agency acting within the scope of its congressionally delegated authority may preempt state law. Id. (quoting Louisiana Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 368–369, 106 S.Ct. 1890, 1898–1899, 90 L.Ed.2d 369 (1986)).

 An agency's statutorily authorized regulations will preempt any state or local law that conflicts with those regulations or frustrates their purpose. City of New York, 486 U.S. at 63, 108 S.Ct. at 1642. In addition, in proper circumstances, an agency may determine that its authority is exclusive and preempt any state efforts to regulate in the forbidden area. Id. When determining whether an agency regulation preempted state law, we must look at 1) whether the agency intended to preempt state law and 2) whether Congress authorized the agency to preempt state law. 486 U.S. at 65–66, 108 S.Ct. at 1643.

B. *VSTA and the APHIS Preemptive Regulation*

In enacting VSTA Congress required that all animal vaccines produced in the United States and all establishments that manufacture such vaccines be licensed by the USDA. 21 U.S.C. Section 154. That section further provides:

> The Secretary of Agriculture is hereby authorized to make and promulgate from time to time such rules and regulations as may be necessary to prevent the preparation, sale, barter, exchange, or shipment as aforesaid of any worthless, contaminated, dangerous, or harmful virus, serum toxin, or analogous product for use in the treatment of domestic animals or otherwise to carry out this paragraph ...

In 1985 Congress amended VSTA to clearly regulate both interstate and intrastate vaccines. 21 U.S.C. Section 151; S.Rep. No. 145, 99th Cong., 1st Sess. 338–39 (1985), reprinted in 1985 U.S.C.C.A.N. 1676, 2004–05. Congress found that federal regulation over all animal vaccines was "necessary to prevent and eliminate burdens on commerce and to effectively regulate such commerce." 21 U.S.C. Section 159.

The USDA has delegated the rulemaking responsibility and authority contained in 21 U.S.C. Section 154 to APHIS. 9 C.F.R. Section 101.2. APHIS has promulgated an extensive regulatory scheme governing the design, manufacture, distribution, testing, and labeling of animal vaccines. 9 C.F.R. Sections 101–124.

APHIS has made the following declaration preempting the field of animal vaccines:

> [W]here safety, efficacy, purity, and potency of biological products are concerned, it is the agency's intent to occupy the field. This includes, but is not limited to the regulation of labeling. Under VSTA, Congress clearly intended that there be national uniformity in the regulation of these products.

> * * *

> APHIS ... does not agree that States should be allowed to add various restrictions ... based upon a need to protect domestic animals or the public health, interests or safety. Any restrictions, other than those which are necessary to address a local disease condition, should be Federally imposed so that they are uniform nationwide.

> * * *

> States are not free to impose requirements which are different from, or in addition to, those imposed by USDA regarding the safety, efficacy, potency, or purity of a product. Similarly, labeling requirements which are different from or in addition to those in the regulations under the Act may not be imposed by the States. Such additional or different requirements would thwart the Congressional intent regarding uniform national standards, and would usurp USDA's authority to determine which biologics are pure, safe, potent and efficacious.

57 Fed.Reg. 38758, 38759 (August 27, 1992).

C. *Applications of APHIS Preemption Regulation to State Common Law Claims*

■ The reported cases have uniformly held that Congress granted the USDA and APHIS broad regulatory power to ensure safe and effective vaccines while at the same time minimize undue burdens on interstate commerce that often accompany varied state regulations which includes the authority to preempt claims in state courts. *Lynnbrook Farms v. Smithkline Beecham Corp.*, 79 F.3d 620, 625–27 (C.A.7 Ill.1996) (affirming *Lynnbrook Farms v. Smithkline Beecham Corp.*, 887 F.Supp. 1100 (C.D.Ill.1995)); *see also Murphy v. SmithKline Beecham Animal Health Group*, 898 F.Supp. 811, 814–15 (D.Kan.1995); *Brandt v. Marshall Animal Clinic*, 540 N.W.2d 870, 874–75 (Minn.App. 1995). These courts have further held that the APHIS preemption declaration set out above shows an intent to preempt state common law actions as well as state enactments which are different from or in addition to those imposed by APHIS. *Lynnbrook Farms*, 79 F.3d at 627–28; *Murphy*, 898 F.Supp. at 817; *Brandt*, 540 N.W.2d at 877. Using a different approach, the court in *Garrelts v. SmithKline Beecham Corp.*, 943 F.Supp. 1023 (N.D.Iowa 1996), has also concluded that APHIS intended to preempt state law, *id.* at 1059–60, and that Congress intended that APHIS be authorized to preempt state law in the field of vaccines for domestic animals. *Id.* at 1062–70. However, the court did not find authorization to preempt tort claims for injuries to humans. *Id.* at 1069–70.

D. *Application of the APHIS Preemption Regulation to the Causes of Action Asserted by Plaintiffs*

The conclusion that Congress granted APHIS the power to preempt state law in the field of animal vaccines and that APHIS intended to do so, does not mean that every common law claim relating to animal vaccines is preempted. The APHIS regulation preempts only those requirements which are "different from or in addition to" those imposed by APHIS. Accordingly, we must determine whether plaintiffs' claims would impose such standards. We first look at the allegations of the petition.

■ We address Count V first. In Count V plaintiffs allege that defendants failed to comply with APHIS regulations with regard to the testing and manufacture of Ava–Pox–LM to insure the safety, efficacy, potency, or purity of the product which caused the vaccine to be sold in a defective and unreasonably dangerous condition in that the vaccine was contaminated with the REV virus. This count directly and specifically seeks damages for defendants' non-compliance with APHIS regulations. No case has held that APHIS preempts common law claims based on non-compliance with APHIS regulations. In *Lynnbrook Farms* the court specifically noted that it was not a case involving non-compliance. 79 F.3d at 630.[1] It observed that the vaccines at issue in that case had met APHIS standards for safety, efficiency, potency, and purity and that, because Lynnbrook Farms' claims sought to impose additional or different requirements in these areas, they were preempted. *Id.* However, a "bad batch" claim is not preempted because a jury would not be required to make a finding contrary to an APHIS requirement. *Garrelts*, 943 F.Supp. at 1059. Rather, the jury would only have to find that the USDA standards under which a license had been granted had not been met as to a particular batch of vaccine. *Id.* at 1060.

This conclusion is supported by *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) in which the Court considered the scope of preemption under Section 360k of the Medical Device Act which provides that, with certain exceptions, no state may establish with respect to a device intended for human use any "requirement"

---

1. In several of the reported cases, a letter dated December 22, 1995 was in evidence in which the Acting Administrator of the agency explained its intent to preempt in promulgating the rule and which concluded that "[w]e did not intend to preempt common law actions for damages arising from noncompliance with USDA regulatory standards." *See Lynnbrook Farms,* 79 F.3d at 629.

"which is different from, or in an addition to, any requirement applicable under this chapter to the device." 21 U.S.C. Section 360k(a)(1). All of the justices agreed that this language did not preempt claims seeking damages for violation of FDA regulations. *Medtronic,* 518 U.S. at 494–96, 116 S.Ct. at 2255 (plurality opinion), 518 U.S. at 506–08, 116 S.Ct. at 2261 (BREYER, J. concurring in part and concurring in the judgment), 518 U.S. at 513–14, 116 S.Ct. at 2264 (O'CONNOR, J., REHNQUIST, C.J., SCALIA, J. and THOMAS, J., concurring in part and dissenting in part). The plurality opinion stated that the existence of a damage remedy "provides another reason for manufacturers to comply with identical existing 'requirements' under federal law." 518 U.S. at 494–96, 116 S.Ct. at 2255. Justice O'Connor's opinion agreed that the plaintiffs' claims were not preempted by Section 360k to the extent that they seek damages for Medtronic's alleged violation of federal requirements because such a claim does not impose a requirement which is "different from or in addition to" federal requirements. 518 U.S. at 513–14, 116 S.Ct. at 2264.

For all the above reasons, we hold that Count V is not preempted.

We next examine Counts I through IV. These counts, for misrepresentation, breach of warranty and strict liability, purport to state causes of action which the courts in *Lynnbrook Farms, Murphy* and *Brandt* have held to be preempted. However, the underlying facts in these cases were not based on a "bad batch" or noncompliance theory. For this reason we must independently examine each of these counts to determine if they seek to impose additional or different requirements than APHIS has imposed.

■ Count I alleges misrepresentation on the package label and inserts. Plaintiffs set out the statements made on the label or package inserts as representations of fact. APHIS regulations specifically provide that labels must be reviewed and approved by APHIS prior to their use upon animal vaccines. 9 C.F.R. Section 112.5. APHIS regulations also specifically provide what information shall be contained in animal vaccine labels and package inserts. 9 C.F.R. Section

112.2. The parties agreed that AVA–POX–LM was licensed by the DOA. Because APHIS approved the label and inserts, a claim for misrepresentation which would require a jury to find that defendants' label should have contained other or different information would be preempted under the reported cases. *See Garrelts,* 943 F.Supp. at 1059; *Lynnbrook Farms,* 79 F.3d at 630. However, in this count, plaintiffs do not challenge the contents of product labeling and inserts, but seek instead to recover damages because the vaccine as manufactured did not conform to the product labeling. The count does not seek to impose "additional" or "different" requirements from those imposed by APHIS. It is therefore not preempted.

■ In Counts II and III plaintiffs allege that Ava–Pox–LM failed to conform to the implied warranty of merchantability and the implied warranty of fitness for a particular purpose because the vaccine was contaminated with the REV virus. Count IV is a strict liability claim in which plaintiffs allege that Ava–Pox–LM was sold in a defective and unreasonably dangerous condition in that the vaccine was contaminated with the REV virus. These causes of action have been found to be preempted where they challenged a product manufactured in compliance with APHIS regulations as unsafe or ineffective. *See Lynnbrook Farms,* 79 F.3d at 630. These claims were also held preempted in *Murphy,* 898 F.Supp. 811 and *Brandt,* 540 N.W.2d 870, where non-compliance was not raised.

While the claims in Counts II, III, and IV do not specifically allege non-compliance with APHIS regulations, as Count V does, liability in each count is premised on a contamination or a "bad batch" theory. In finding contamination as a result of non-compliance, a jury would not impose "additional" or "different" requirements from those imposed by APHIS. Therefore to the extent that Counts II through IV allege claims for a "bad batch" as a result of noncompliance with APHIS regulations, they are not preempted.

The trial court erred in entering summary judgment on the petition on the ground of federal preemption.

For their third point, plaintiffs assert that the trial court erred in denying their motion to strike the affidavit of Fred W. Melchior, Jr., Vice President of Sterwin Laboratories, filed in support of defendants' motion for summary judgment. Plaintiffs argue that the affidavit is insufficient under Rule 74.04(e) in that it states conclusions and not facts and it was not made on the personal knowledge of the affiant. This issue is moot because the trial court specifically indicated that it did not rely on the affidavit in determining the legal question of preemption. It is further moot in light of our disposition of this appeal. Point three is denied.

The judgment of the trial court is reversed and remanded.

RHODES RUSSELL and JAMES R. DOWD, JJ., concur.