**THE EMPIRE DISTRICT ELECTRIC COMPANY, Appellant,**

v.

**Lois M. GAAR, Respondent.**

**No. 23242.**

Missouri Court of Appeals, Southern District, Division Two.

July 13, 2000.

Motion for Rehearing or Transfer Denied Aug. 4, 2000.

Application for Transfer Denied Oct. 3, 2000.

---

John S. Dolence, Spencer, Scott & Dwyer, PC, Joplin, for Appellant.

Joel B. Laner, Hazelton Laner & Batson, Kansas City, for Respondent.

KERRY L. MONTGOMERY, Presiding Judge.

This matter involves a disputed boundary line between two parcels of real property owned by The Empire District Electric Company (Appellant) and Lois M. Gaar (Respondent) respectively. After a land survey revealed that the property boundaries overlapped, Appellant filed an action for ejectment against Respondent and requested the trial court to quiet title in its name. Respondent filed a counterclaim asserting that she acquired title to the property through adverse possession. Appellant contended that its land was given to a public use and therefore protected against adverse possession claims by § 516.090.[1] The trial court rejected Appellant's argument and vested title in Respondent. This appeal followed.

The parties presented the case to the trial court based upon a joint statement of facts. A brief recital of these facts is necessary to illuminate the issues on appeal.

In 1913, pursuant to an Act of Congress, the Ozark Power & Water Company constructed the Ozark Beach Hydroelectric Project (the Project) and created Lake Taneycomo in Taney County, Missouri. In order to construct and operate the Project, Ozark Power & Water Company obtained title to various tracts of real property along the lake's perimeter. On March 18, 1913, Ozark Power & Water Company obtained a parcel of land from Eliza J. Groves by warranty deed. A portion of this parcel is the subject of this case.

On April 14, 1927, Appellant acquired Ozark Power & Water Company and obtained title to all real property owned by the company in Taney County. Appellant is a Kansas corporation, authorized to do business in Missouri. It is a private, for-profit corporation whose common stock is publicly traded and held by various shareholders.

Appellant continues to operate the Project and has been licensed by the federal government to do so since 1958. The Federal Energy Regulatory Commission (FERC) licenses the Project "to further the public interest by meeting public needs including, but not limited to, the public supply of electricity, flood control, conservation efforts, and public recreation." FERC issued the most recent 30–year license in 1992.

The 1992 license states that the Project consists of "all lands, to the extent of the licensee's interest in those lands, enclosed by the project boundary." Although Ap-

---

1. Statutory references are to RSMo 1994 unless otherwise indicated.

pellant had not entered upon the property in question for the ten-year period prior to March 31, 1996, and it had no current plans to use the property in connection with the delivery of hydroelectric power, it included the property within the Project boundaries on all license applications.

In December of 1987, Respondent purchased the parcel of land abutting the portion of Appellant's land that is at issue. Respondent improved the property with a residence, garden, dock, and outbuildings. Although Respondent does not currently reside on the property, she leases it out and intends to use it to house missionaries. Respondent has paid the property tax assessment on the land since she purchased it.

In 1996, Appellant began negotiating with the Missouri Department of Conservation regarding a potential lease of a portion of its property for the development of a public access boat ramp. In April of that year, Appellant had the land surveyed. The survey revealed that the eastern boundary of the property described in Respondent's deed overlapped the western boundary of the property described in Appellant's deed. Consequently, Appellant filed an action for ejectment requesting to clarify the proper boundary lines of the parcels.

Thereafter, Respondent filed a counterclaim requesting the trial court to grant her title to the disputed portion of land based upon a claim of adverse possession. Appellant did not dispute that Respondent and her immediate predecessors in title had maintained actual, open, notorious, and exclusive possession under a claim of right for a continuous 10–year period ending on March 31, 1996. Instead, Appellant maintained that all property within the Project boundary was put to public use and therefore protected against Respondent's adverse possession claim by § 516.090, which provides that no statute of limitation shall extend to lands "given,

granted, sequestered or appropriated to a public use."

The trial court held a hearing on the matter on August 16, 1999. The sole issue presented to the trial court was whether Respondent could adversely possess property included within the Project boundary. On August 24, 1999, the trial court issued Findings of Fact and Conclusions of Law determining that "the property claimed by [Appellant] has not been devoted to a public use." The trial court found that although the public derives an indirect benefit from Appellant's ability to generate electricity, this does not amount to a public use as contemplated by § 516.090. The trial court then concluded that the statute did not bar Respondent's adverse possession claim. The court subsequently entered a judgment dismissing Appellant's claim and quieting title in Respondent's name.

Appellant raises four points on appeal. Each point challenges the soundness of the trial court's determination that the subject property was not put to a public use and thereby protected by § 516.090. Appellate review of this court-tried case is governed by the principles set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). "The judgment of the trial court must be sustained unless it is without substantial evidentiary support, unless it is against the manifest weight of the evidence, or unless it erroneously declares or applies the law." *Osage Water Co., v. Miller County Water Auth., Inc.*, 950 S.W.2d 569, 572 (Mo.App.1997) (citing *Murphy v. Carron* at 32). This Court will defer to the trial court's findings of fact where the evidence is conflicting but not to its determinations of law. *City of Kansas City v. Hon*, 972 S.W.2d 407, 409 (Mo.App. 1998).

In Points I, III, and IV, Appellant raises the issue of federal preemption.[2] In each of these points, Appellant claims the Supremacy Clause of the United States Con-

---

**2.** We will address these points first in order to facilitate the logical flow of this opinion.

stitution preempted the trial court from concluding that the disputed property was not dedicated to a public use for the purposes of § 516.090 because the land falls within the Project boundary and FERC had already made a binding determination as to the public utility of the land.

■■■ The Supremacy Clause [3] empowers the federal government to preempt state laws to the extent it believes that such action is necessary to achieve its purposes. *Silvey v. Mallinckrodt, Inc.*, 976 S.W.2d 497, 498–99 (Mo.App.1998). The law of preemption is well-settled:

[The federal government may preempt state laws] by federal statute or by federal regulations which have been properly adopted in accordance with statutory authorization. Thus, a federal agency acting within the scope of its congressionally delegated authority may preempt state law.

An agency's statutorily authorized regulations will preempt any state or local law that conflicts with those regulations or frustrates their purpose. In addition, in proper circumstances, an agency may determine that its authority is exclusive and preempt any state efforts to regulate in the forbidden area. When determining whether an agency regulation preempted state law, we must look at 1) whether the agency intended to preempt state law and 2) whether Congress authorized the agency to preempt state law.

*Id.* at 499 (citations omitted).

■■■ In its first point on appeal, Appellant contends that the trial court erred in finding the property had not been devoted to public use because FERC, "through its extensive licensing procedure mandated by the Federal Power Act, has determined the entire Project, including the subject property, serves the public interest." Appellant suggests that FERC's decision to issue the license amounted to a final and binding determination as to the "public

utility" of the land. Appellant argues that under the Supremacy Clause of the United States Constitution the trial court was preempted from making its independent finding that the land was not put to a "public use" as contemplated by § 516.090.

Appellant fails to cite, and our research failed to reveal, any cases in support of its proposition that the mere issuance of an operating license by FERC bound the trial court to apply § 516.090 to the property at issue. Appellant notes that FERC has issued orders that broadly define the public interest under the Federal Power Act to include "the protection of fish and wildlife and their habitat, the development of public recreation and project reservoirs, and the preservation of environmental amenities." *Public Utility District No. 1 of Lewis County, Washington*, 80 FERC 61,350, page 7, FERC Records & Information Management System (Sept. 25, 1997). Appellant equates a determination that a project is in the "public interest" in the context of FERC's licensing procedures with "public use" for the purposes of § 516.090.

Appellant concludes that prior to issuing the 1992 license, FERC assessed all land included within the boundaries of the Project in the license application and determined the public necessity and utility of the entire area, "not just the electrical facilities within the Project." This contention ignores the language in § 796(11) of the Federal Power Act that defines a "project" to include only "lands or interests in lands the use and occupancy of which are *necessary or appropriate* in the maintenance and operation of such unit." (Emphasis added). This section necessarily limits FERC's determination that the Project serves the public interest to include only those lands that are "necessary and appropriate" for the generation of hydroelectric power by Appellant.

It is undisputed that Appellant had not entered or used the property in question

**3.** U.S. CONST. art. VI, cl. 2.

for at least the ten years prior to April 1996. Appellant does not contend it used the disputed property to generate hydroelectricity or for any other purpose contemplated by the FERC license. When FERC issued the 1992 license, Appellant had never asserted any ownership interest in the subject property. At that time, Respondent's home and other improvements occupied the land. Appellant was not even aware it had any interest in the land occupied by Respondent until it had the area surveyed in 1996 in contemplation of leasing the land to a third party. Appellant also conceded it had no plans in the immediate future to use the land to further the purposes of the Project.

In light of these facts, Appellant fails to persuade this Court that in 1992, FERC intended to make a binding determination that the disputed property "serves the public interest" because it is "necessary or appropriate" in the maintenance or operation of the Project. Furthermore, Appellant offers nothing to suggest that by authorizing FERC to determine whether the land facilitates the "public interest" for the purposes of its licensing procedures, Congress intended to authorize FERC to make a binding determination that the land in question is "given, granted, sequestered, or appropriated" to a public use for the purposes of § 516.090. Accordingly, we cannot conclude that the mere issuance of the operating license by FERC precluded the trial court from determining that the disputed land was not put to a public use for the purposes of § 516.090.

Finally, Appellant's 1992 license appears to recognize the potential that Appellant may face adverse possession claims to some of the Project land. The license specifically states that the Project consists of "all lands, *to the extent of licensee's interest in those lands, . . ..*" This language lends no support to Appellant's claim of immunity from an adverse possession claim under § 516.090. Point I is denied.

Point III, Appellant's second federal preemption claim, is similar to its first. Appellant maintains that the Supremacy Clause barred the trial court from ruling that the subject property was not necessary to the Project because the Federal Power Act grants FERC sole authority to make such decisions. Appellant fails to cite any cases in support of this contention.

Appellant argues that the trial court's conclusion that § 516.090 did not protect the disputed land from Respondent's adverse possession claim was based upon a determination that the disputed property was not necessary to the Project. Review of the trial court's Findings of Fact and Conclusions of Law and the Judgment do not suggest the ruling was made on this basis. Rather, the trial court determined the land was not put to a "public use" as contemplated by § 516.090. Point III is denied.

In Point IV, Appellant claims the trial court erred in failing to apply § 516.090 to the subject property because when it issued the operating license FERC made a binding decision that the property had been "sequestered to a public use." Appellant again fails to cite any cases in support of this contention. Appellant provides essentially the same argument presented under Point I. We have already found that the issuance of the operating license did not preempt the trial court from making an independent determination that the disputed area was not "given, granted, sequestered, or appropriated" to any public use in the context of § 516.090. Point IV is denied.

In Point II on appeal, Appellant claims the trial court erred as a matter of law when it concluded that the subject property was not put to a "public use" as contemplated by § 516.090. Appellant maintains the trial court inappropriately equated "public use" with "public access" in the context of the statute.

Appellant bases this argument on the trial court's Findings of Fact and Conclu-

sions of Law, which states in pertinent part:

> 4. Although the public derives an indirect benefit from [Appellant's] generation of electricity and its operation of [the Project], the public may not enter on and use [Appellant's] property in the manner contemplated by R.S.Mo. § 516.090.

Appellant claims the trial court misconstrued "public use" to be limited to "parks, streets, or other areas where people may freely enter." We disagree.

Appellant acknowledges there are no cases clearly defining "public use" in the context of § 516.090. Without specific guidance in this matter, we must examine the purposes for which the statute was enacted. In *Dudley v. Clark*, 255 Mo. 570, 164 S.W. 608, 612 (1914), the Missouri Supreme Court noted that the law favors pious, charitable and public uses of land, but that prior to the enactment of § 516.090, statutes of limitations could run against all lands, including lands dedicated to such uses. The *Dudley* Court explained that the legislature was motivated to change this situation because "[i]t was found to be a ruinous public policy, for under it school lands, roads, parks, streets, etc., were lost to the state and the public through the laches or ignorance of the public or of officials representing it.... To put a stop to that mischief was one of the main objects of [§ 516.090]." *Id.*

 In *Anson v. Tietze*, 190 S.W.2d 193, 196 (Mo.1945), the Supreme Court noted that the protection afforded by § 516.090 is a privilege restricted to lands that have a pious, charitable, or public use. "The issue is not concerned with the corporeal thing, the land; but with the incorporeal privilege, a specified use of land." *Id.* at 196–97. In line with this reasoning, courts have found "public use" in the context of § 516.090 to include lands used for schools, roadways, and streets. *See e.g.,* *Wilson v. Wheeler Farms, Inc.*, 591 S.W.2d 287 (Mo.App.1979) (applying the statute to school lands); *City of South Greenfield v.*

*Cagle*, 591 S.W.2d 156 (Mo.App.1979) (finding that § 516.090 protected a public roadway from adverse possession claim); *City of Poplar Bluff v. Knox*, 410 S.W.2d 100 (Mo.App.1966) (applying § 516.090 to a public street). In each of these examples the general public derived a direct benefit from the use of the land.

 As articulated in *Dudley*, the rationale behind the enactment of § 516.090 was to protect against the loss of public lands due to the carelessness or oversight of the people charged with protecting the public's interests. Section 516.090 has never been applied in any reported case to the situation presented here. Appellant is a corporation operating for profit and the primary benefit of its shareholders. One of its business endeavors is producing hydroelectricity. The land in question has never been used to aid in Appellant's production of electricity, nor does Appellant have intentions to use it for this purpose in the future.

Although there may be some situations where § 516.090 operates to protect lands owned by a utility and used in the production of electricity, Appellant is hard-pressed to apply the rationale behind the enactment of § 516.090 to the facts of this case. We cannot say the trial court erred in determining the disputed land did not qualify for the "public use" protection under § 516.090. Point II is denied.

The judgment is affirmed.

PREWITT, J., and BARNEY, J., concur.