

# Missouri Court of Appeals

## Southern District

### Division Two

MICHAEL A. PREDOVIC,           )
MARILYN M. PREDOVIC,           )
PAUL R. ETHERIDGE and          )
ELIZABETH A. ETHERIDGE,        )
                               )
            Appellants,        )
                               )
    vs.                        )   No. SD36404 and SD36405
                               )        Consolidated
THE EMPIRE DISTRICT ELECTRIC   )
COMPANY, and                   )   FILED: June 15, 2020
CHUCK PENNEL, ASSESSOR,        )
                               )
            Respondents.       )

### APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

Honorable Jennifer Growcock, Judge

### <u>REVERSED AND REMANDED</u>

Appellants sued Empire, claiming ownership of condominium properties along Lake Taneycomo under various theories.  The trial court granted Empire's motion for summary judgment, rejecting each of Appellants' ownership theories and ruling that "Empire is vested with fee simple title to the Subject Properties."

Our review is de novo.  ***ITT Comm. Fin. Corp. v. Mid-Am. Marine Supply Corp.***, 854 S.W.2d 371, 376 (Mo. banc 1993).  We reverse and remand.

### Background

In 1913, Empire's predecessor Ozark Power created Lake Taneycomo for hydroelectric purposes after taking deed rights along the planned lake's perimeter. ***Empire Dist. Elec. Co. v. Gaar***, 26 S.W.3d 370, 372 (Mo.App. 2000).

Apparently characteristic of those deed transactions, the Hoenshels quit-claimed Ozark Power one riverbed acre plus a 22.9-acre strip along the White River lying between the riverbank and an elevation 715 feet above mean sea level "for lake purposes in connection with the dam being constructed …." (the 1912 "Hoenshel Deed"). This so-called "715 line," for many years following the lake's creation and at most times relevant to this case, was widely believed to closely track the lakeshore consistent with county assessment maps, corresponding tax values, and property taxes billed to and paid by lakeside landowners.

Appellants own units in the Timbermill Condominiums, developed above the presumed 715 line in the mid-1980's. Recently, an Empire-commissioned survey placed the 715 line further back from the lake, encompassing the Timbermill Condominiums and other properties and prompting Taney County to reassess taxes after 2015 and notify some 35 landowners "that you may need to look at getting a lease from Empire to use the property that was thought to be yours" because the 715 line was "much different than had been accepted for years causing this issue."

Appellants sued, claiming ownership of their respective condo properties under various theories. The court consolidated the cases and, on cross-motions for summary judgment, rejected all of Appellants' ownership theories, granted judgment for Empire, and ruled that Empire owned the subject properties in fee.

## Appellants' Point 2 (§ 516.070)

Although Appellants raise six points, we need address only the second and Appellants' pleas of ownership under RSMo § 516.070, the so-called "30-year" tax statute.[1] To establish title thereunder, as relevant here, a claimant must show the

---

[1] Stating, in pertinent part, that whenever any real estate shall

> be in the lawful possession of any person, and which shall or might be claimed by another, and which shall not at such date have been in possession of the said person claiming or who might claim the same, or of anyone under whom he claims or might claim, for thirty consecutive years, and on which neither the said person claiming or who might claim the same nor those under whom he claims or might claim has paid any taxes for all that period of time, the said person claiming or who might claim such real estate shall, within one year from said date, bring his action to recover the same, and in default thereof he shall be forever barred, and his right and title shall, ipso facto, vest in such possessor.

record-titleholder did not possess the land or pay taxes on it for 31 years, and for the last year (at least), the claimant had lawful possession. *See **Bevier v. Graves***, 213 S.W. 74, 76 (Mo. 1919).[2]

Empire's summary-judgment filings urged that Empire had been assessed and paid taxes "up to the 715-foot elevation" ever since the 1912 Hoenshel Deed. The trial court agreed, finding Appellants did not properly controvert and thus admitted Empire's SUMF 47 & 48.[3] Further, the court opined that no Missouri

---

[2] Section 516.070 dates back to 1874; 80% of Missouri cases citing it are over 90 years old.

[3] Statement of Uncontroverted Material Facts; s*ee* Rule 74.04(c)(1). Appellants had to support any SUMF denial "with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial" or that numbered SUMF paragraph was deemed admitted. Rule 74.04(c)(2). With those rules in mind, we quote Empire SUMF 47 & 48 and Appellants' responses:

47. Defendant Empire has been assessed and it has paid real estate taxes for the land it owns under the 1912 Hoenshel Deed, from the shoreline of Lake Taneycomo up to the 715-foot elevation, during the entire period it has owned that property. (D. Ex. 18, Certified Tax Records of the Taney County Collector; D. Ex. 3, Lebeda Affidavit ¶ 20).

**RESPONSE** [Predovic]: Denied. There is no Exhibit 18 attached to Defendant Empire's Statement of Material Uncontroverted Facts; the affidavit of Jeffrey Lebeda (Defendant Empire's Exhibit 3) is incompetent to establish this supposed fact because it is not based upon personal knowledge. See copies of Taney County Collector's records showing that Defendant Empire has paid taxes on only 2.78 acres of 23.9 acres described in the 1912 Hoenshel Deed (Predovic Exhibit 72).

**RESPONSE** [Etheridge]: Denied. Empire has not been assessed real estate taxes for the Subject Properties, or any portion thereof, and as such, has not paid any real estate taxes for said properties. See generally Exhibits 72 and 78; and 71 (Affidavit of Chuck Pennel) at ¶ 14-16 and Exhibits 1-2.

48. The Taney County Assessor has engaged in a practice of assessing taxes to Defendant Empire up to the boundary of the 1912 Hoenshel deed (referred to as the "715 foot elevation"), and assessing taxes on the Subject Property and other lots in the Lakeside Subdivision, which overlapped on the land owned by Empire Electric. (D.Ex. 3, Lebeda Affidavit ¶ 24; Exhibit 23, *Alkire* trial transcript, p. 46-57, Exhibits E, F, CC, 3).

**RESPONSE** [Predovic]: Denied. The affidavit of Jeffrey Lebeda (Defendant Empire's Exhibit 3) is incompetent to establish this supposed fact because it is not based upon personal knowledge. Defendant Empire's Exhibit 23 does not support the alleged fact asserted. See copies of Taney County Collector's records showing that Defendant Empire has paid taxes on only 2.78 acres of 23.9 acres described in the 1912 Hoenshel Deed (Predovic Exhibit 72).

**RESPONSE** [Etheridge]: Denied. Empire has not been assessed real estate taxes for the Subject Properties, or any portion thereof, and as such, has not paid any real estate taxes for said properties. See generally Exhibits 72 and 78; and 71 (Affidavit of Chuck Pennel) at ¶ 14-16 and Exhibits 1-2.

case had applied § 516.070 to "an error by the Assessor in mapping or calculation of acreage subject to tax" and "the purpose behind the statute" did not justify doing so here. We cannot agree in either respect.

*Tax Payments*

As footnote 2 shows, Appellants' denials of Empire SUMF 47 & 48 were properly supported with specific references showing a genuine material fact issue for trial by:

- Appropriately challenging Empire's cited affidavit.[4]

- Offering Assessor Pennel's affidavit controverting Empire's claim to always have been assessed and taxed up to the (true) 715 line.

- Providing county records (Exhibit 72) indicating that Empire

  - from 1985-2015 (31 years) was assessed on only 2.78 acres vs. 23.9 acres under the Hoenshel Deed, and paid taxes ranging from 85 cents (1987) to $6.25 (2015) per year.

  - starting in 2016 was assessed on 17.62 acres and paid taxes of $4,184 or more per year – some 669 times the highest tax previously paid.

The trial court should not have deemed SUMF 47 or 48 admitted. Empire did not establish beyond genuine dispute that it paid, prior to 2016, taxes on the full acreage it claims under the Hoenshel Deed, or specifically that it paid taxes on the condo complex at issue.

---

[4] Empire's proffered affidavit of its employee Jeff Lebeda, with paragraphs 20 and 24 reciting Empire SUMF 47 & 48 verbatim, falls short of Rule 74.04(e)'s demand that such affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." First, Mr. Lebeda states only that he personally knows _or_ "ha[s] investigated these matters and believe[s] them to be true and correct" with no further indication which of his statements fit which category. He next asserts, for matters pre-dating his current Empire role, that he "reviewed" Empire's "documents and records ... and confirmed the information was true and correct" without offering any business-records foundation or other explanation. Perhaps most significantly, the affidavit makes no effort to "show affirmatively" how Mr. Lebeda, as an Empire employee, would be competent to testify about Taney County Assessor practices, assessment methods, etc. (contrast Appellants' counter-affidavit from the elected Assessor himself, Mr. Pennel).

While these affidavit flaws do not reflect on Mr. Lebeda personally (who presumably neither drafted the affidavit nor knew Rule 74.04(e)), they do suggest Empire never prima facie showed a right to judgment as a matter of law. *See **Columbia Mut. Ins. Co. v. Heriford***, 518 S.W.3d 234, 241 (Mo.App. 2017). Even if it had, Appellants adequately controverted Empire's § 516.070 fact assertions as noted.

*Assessor Errors and § 516.070*

The trial court further opined that no Missouri case had applied § 516.070 to an assessor's error in mapping or calculating taxable acreage nor was that justified by the statute's "purpose." Empire urges the same on appeal, charging that Appellants' § 516.070 claims rest

> entirely upon apparent errors made by the Taney County Assessor in mapping the location of the 715-foot elevation boundary from the 1912 Hoenshel Deed, and errors by the Assessor in the calculation of the number of acres to tax. However, neither the statute nor the case law supports divesting Empire of ownership simply due to errors by the Assessor mapping a property or calculating the acreage.

These overlook ***Abeles v. Pillman***, 168 S.W. 1180 (Mo. 1914), where a quit-claim titleholder admitted that he and his title predecessors had not paid taxes, "but alleged as an excuse therefor that the land had never been assessed for taxation." ***Id***. at 1181. In rejecting that argument, our supreme court observed "that the statute makes no exception in this regard. All the showing that the statute requires in this regard is that neither the claimant nor those under whom he claims or might claim have paid any taxes for 30 years." ***Id***. at 1185.

As relevant to Empire's argument, the supreme court in ***Abeles*** continued:

> Whether or not an excuse might arise if it should appear that [titleholders], *after some effort upon their part* and by matters over which they had no control, were *prevented* from making payment of taxes because none were assessed we need not now determine, because such a situation is not here involved, and *it would indeed be a rare occasion where the owner would have any difficulty in having his land assessed after calling it to the attention of the proper officials.*

***Id***. (our emphasis). Likewise, one cannot say from this summary-judgment record whether or not Empire can prove a legally-viable excuse for any failure to pay taxes. Certainly we cannot say Empire has proved such excuse as a matter of law.[5]

---

[5] Predictably, Appellants portray Empire in a contrary light, urging that

> Empire's argument that it should not be penalized for the alleged error on the part of the Assessor rather than itself, turns a blind eye to the fact that Empire readily accepted and retained decades of financial benefit as a result of this so-called "error," all while knowing that it was only paying taxes on 2.78 acres out of the 17.62 acres the Assessor shows as being located in Section 28, and not the full 23.9

## Conclusion

Empire did not defeat Appellants' ownership claims on all theories pleaded, so summary judgment was improper. ***Ascoli v. Hinck***, 256 S.W.3d 592, 597 (Mo.App. 2008). "[W]here, as here, the non-movant/plaintiff's petition alleges alternate theories of recovery on the same claim, summary judgment on the claim is not proper unless the movant/defendant can establish a case for summary judgment on each theory pled." ***Guffey v. Integrated Health Services***, 1 S.W.3d 509, 517 (Mo.App. 1999). We reverse and remand for further proceedings consistent with this opinion.

DANIEL E. SCOTT, P.J. – OPINION AUTHOR
JEFFREY W. BATES, C.J. – CONCURS
DON E. BURRELL, J. – CONCURS

---

acres Empire claims to own as a result of the 1912 Hoenshel Deed. At the same time, Empire allowed other property owners around Lake Taneycomo, including the Appellants and their predecessors, to shoulder the tax burden on property Empire now claims it has owned the entire time.

\* \* \*

Viewed in totality, Empire not only remained silent for decades on its so-called claim of fee title to land laying above the Old 715 Line while dozens of property owners openly bought, sold and developed the raw land into homes and businesses, but it also perpetuated and reinforced those owners' reasonable belief that they owned the land above the Old 715 Line by recognizing and accepting the Assessor's demarcation of the Old 715 Line on the Assessor's maps—all the while reaping the cost savings as the other landowners shouldered the tax burden and developed the land, only to have Empire now elect to assert its so-called ownership to their detriment.

We express no view either way, of course. The point is that the summary-judgment record fails to adequately establish either Empire's relevant tax payments or whether any non-payment may be legally excused for § 516.070 purposes. Those issues, at least, must be resolved by a fact-finder.